# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CAMELA WALKER<br>5115 Vine St., Unit 32013<br>Cincinnati, OH 45232 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| KROGER, INC.<br>Blue Ash Technology Center<br>9997 Carver Rd.<br>Blue Ash, OH 45242 | ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Kroger, Inc.<br>c/o Corp. Service Co. (Stat. Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Camela Walker, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Walker is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant KROGER, INC. ("Kroger") is an Ohio-incorporated company. The relevant location with the events and omissions of this Complaint took place was at 9997 Carver Rd., Blue Ash, OH 45242.

3. Kroger is, and was at all times hereinafter mentioned, Walker's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., Title VII

of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S. Code § 634 et seq., and R.C. § 4112.01(A)(2).

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Walker is alleging federal law claims under the FMLA, Title VII, and the ADEA.

5. This Court has supplemental jurisdiction over Walker's state law claims pursuant to 28 U.S.C. § 1367, as Walker's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 180 days of the conduct alleged below, Walker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2019-00909) against Defendant ("EEOC Charge").

8. On or about August 15, 2019, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Walker regarding the EEOC Charge.

9. Walker received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10. Walker has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

11. Walker has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

12. Walker is a former employee of Kroger.

13. At all times noted herein, Walker was qualified for her position with Kroger

14. At all times noted herein, Walker could fully perform the essential functions of her job.

15. Walker is African-American and is age 53, placing her in protected classes for her race and age, respectively.

16. Walker is substantially older than the others noted herein, except where noted otherwise.

17. Walker worked for Kroger, ending as certified pharmaceutical technician representative, from on or about August 3, 2015, until Kroger terminated Walker's employment on or about July 26, 2019.

18. Walker initially came to Kroger through Recruit Holdings Co., Ltd. d/b/a StaffMark ("StaffMark"), a temporary worker placement service, in or around late 2015.

19. Walker started with Kroger initially as a pharmaceutical technician/call center representative after interviewing with Amanda (LNU, StaffMark, Caucasian, late 20s).

20. Walker did not interview with any Kroger-specific people prior to her placement with Kroger.

21. After Walker completed her 90-day probationary period, she was placed on a specific team under Brittany Harris (then-acting supervisor of call center, African-American, late 20s/early 30s).

22. Walker had no issues with performance or attendance at the call center and stayed there until she was hired full-time in or around mid-February 2016.

23. After Walker became a full-time Kroger employee, Harris became a full supervisor, still over Walker.

24. In or around March 2016, Walker applied for a promotion to a specialist position with Kroger.

25. Harris told Walker she was unlikely to receive the promotion as she had not yet been with Kroger long.

26. Walker had previous experience in the work, so chose to apply for the specialist role anyway.

27. Walker's application was rejected without reason cited and without interview.

28. After the rejection, Walker discussed with Harris how she could improve her chances the next time a specialist position opened; Harris mentioned a mentoring group that Kroger had.

29. In or around September or October 2016, Walker joined that mentoring group.

30. As part of the mentoring program, Walker shadowed Debbie Garrison (specialist, Caucasian, 60s).

31. Walker's time with the mentoring program ended before her next event could occur.

32. Kroger told Walker that ending her participation in the mentoring program was because she might "scare away new hires."

33. Walker asked for an explanation of what "scar[ing] away new hires" meant but was never given a satisfactory answer.

34. In or around early 2017, Walker was allowed to rejoin the mentoring program, this time under Kayla Smith (trainer, Caucasian, 30s).

35. Smith again told Walker that she could not continue in the mentoring program and that she was "unteachable," in or around early 2017.

36. Smith also again told Walker she felt Walker would scare away new hires.

37. Again, Walker asked what that meant, but again received no satisfactory response.

38. In or around April or May 2017, Walker discussed her future at Kroger with Harris.

39. Harris told Walker that Kroger was unlikely to promote her to a specialist position, but wanted to help prepare Walker for the position anyway.

40. Harris offered to allow Walker to sub-in as a specialist on Harris' team (only) to help prepare her for the position later.

41. Walker applied for another specialist opening also in or around early 2017, but again was given no interview.

42. In or around summer 2017, Walker applied again for another specialist opening, but again was rejected without reason cited.

43. For Walker's summer 2017 application, she was allowed to interview with Joy Monrose (then-acting supervisor, African-American, late 20s) and another, unknown woman (supervisor, African-American, late 20s/early 30s).

44. In or around autumn 2017, Yusen McDaniels (supervisor, African-American, late 20s) gave another interview to Walker for another specialist opening.

45. Again, Walker was rejected for the promotion without reason cited, despite her tenure with Kroger and good performance.

46. In or around late 2017 (around November or December), Walker applied for a position outside of Kroger's call center, a Med Sync position.

47. In or around December 2017, Walker interviewed for the Med Sync position with Molly Patton (Med Sync supervisor, Caucasian, late 20s/early 30s).

48. After the interview, Walker was offered the Med Sync position by Patton, pending a background check.

49. After the background check, Kroger rescinded the Med Sync offer without reason cited.

50. Walker asked Patton for the basis of the rescission of the offer, Patton said she wanted Walker in the role, but that Kroger would not allow her to hire Walker anyway.

51. Walker, also in or around late 2017, also applied to two other positions at other call centers.

52. Walker was granted panel interviews for the two openings: both panels were all-women, one of which was three Caucasians and one African-American, the other of which was three Caucasians and two African-Americans.

53. Walker was then rejected for both positions without reason cited, in or around late 2017.

54. Throughout 2017, Walker repeatedly complained of the lack of promotion to Harris.

55. Walker cited the reason she felt she was repeatedly rejected was due to her race.

56. These recurring complaints of disparate treatment were protected complaints of discrimination.

57. From 2017 to 2018, Walker received FMLA leave for her father's medical conditions.

58. In or around January 2018, Walker was given a semi-promotion to a Call Center Representative II position, which came with a slight pay raise.

59. Walker viewed this pay raise as an act of appeasement from Kroger.

60. Also around that time, Kroger placed Walker into the Med Sync department, despite Kroger previously viewing her as unqualified for the area based on Walker's rejection.

61. In or around early 2018, Walker spoke with Jesse Matthews (HR, Caucasian, 30s) about her recent transfer to the Med Sync department and why it was suddenly acceptable for her to move there.

62. Matthews cited no specific reason for the change.

63. Walker then cited she believed that her race and age were material reasons for the failures to promote her.

64. Throughout 2018, Walker applied to approximately three more specialist positions.

65. Walker was allowed only two interviews from her three applications.

66. During the first interview, in or around March 2018, Walker was interviewed by a panel, including Monrose, Bethany (LNU, supervisor, Caucasian, late 20s), and two other woman (one Caucasian and one African-American, names unknown).

67. Again, Walker was rejected for the promotion.

68. Walker's second interview in or around spring 2018 was also a panel interview, and again she was rejected for the promotion.

69. In or around early May 2018, Kroger celebrated Nurse's Week.

70. As part of Kroger's celebration of Nurse's Week, Kroger bought gifts for two of the nurses employed at Walker's location.

71. Walker is a nurse, but Kroger did not include her in the initial celebration purportedly as Kroger was unaware of her being a nurse.

72. Walker then spoke to management noting that she was indeed a nurse.

73. Kroger management then said they would celebrate Walker as a nurse as well and would get her a gift as part of the celebration.

74. Walker never received this gift, despite the two other nurses receiving theirs.

75. Notably, those two other nurses were Caucasian and under age 40.

76. In or around November 2018, Kroger had an open general manager ("GM") position open at the call center, to which Walker also applied.

77. Walker received no response to the GM application, but assumed she was rejected when Chase Dye (general manager, Caucasian, early 30s) started in the role in or around early 2019.

78. In or around March and May 2019, Walker applied to two more positions outside the call center, but again was rejected for both without reason cited.

79. In or around June 2019, Walker applied for a clinical operation specialist position at Kroger's downtown location.

80. Walker interviewed with Jim Chantel (supervisor, Caucasian 30s) and Katie Ward (supervisor, Caucasian, late 20s/early 30s).

81. Walker was rejected for this position purportedly as another candidate her greater tenure with Kroger than Walker had, despite her being one of the top choices.

82. In or around summer 2019, Walker applied for another specialist position at her call center.

83. Again, Walker interviewed for the position with a panel, including Audra Staubach (supervisor, Caucasian, late 30s/early 40s), Bianca Phillips (supervisor, African-American, 30s), Smith, and Monrose.

84. Walker was told she was a top choice for the position, but was being rejected anyway because "she would resign right after [they] hired [her]."

85. Shortly after this last rejection, Walker spoke with Tom Shelly (HR, Caucasian 50s).

86. Walker questioned Shelly as to why Kroger would not allow her to move up in the company.

87. Walker also mentioned Kroger refused to provide her with the reasons why others were chosen over her.

88. Walker complained she felt her age and race were material pieces as to why she was continually rejected for promotions.

89. In or around spring 2019, Walker spoke with her supervisor about the employee assistance program ("EAP") and further FMLA.

90. Walker cited her emotional issues, stress, anxiety, and depression, which she attributed to Kroger's refusal to promote her, as the basis for the EAP and FMLA requests.

91. Kroger never gave Walker further information on the EAP and the FMLA for her own issues, interfering with Walker's FMLA rights.

92. In or around summer 2019, Kroger implemented new employee policies at Walker's location.

93. Shortly after the new polices were implemented, Dye held a staff meeting about the changes.

94. After the meeting, Walker raised her hand to ask a clarifying question on the policy changes.

95. Dye ignored Walker's raised-hand until a coworker pointed out the Walker had a question.

96. Dye then called on Walker, who asked a question about the policies.

97. Walker had to rephrase the question several times, Dye apparently did not understand the question.

98. Others in the meeting then answered the question to the best of their knowledge, on Dye's behalf.

99. Walker was not satisfied with the answer, and so told Dye that she felt she didn't receive an answer to her question.

100. Dye then said to take any remaining questions to people's respective supervisors.

101. Roughly one week after the staff meeting, Kroger terminated Walker's employment.

102. Kroger cited that Walker had been rude in her exchange with Dye previously.

103. Defendant's termination of Walker was an adverse employment action against her.

104. Defendant's purported reason for Walker's termination is pretext for racial discrimination, age discrimination, FMLA interference, and retaliation.

105. Defendant's purported reasons for refusing to promote/hire Walker were pretextual for racial discrimination, age discrimination, FMLA interference, and retaliation.

106. As a result of the above, Walker has suffered damages, including economic damages, as well as severe emotional distress, anxiety, and depression.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.**

107. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

108. Walker is African-American, and thus is in a protected class for her race.

109. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

110. Defendant treated Walker differently than other similarly situated employees based upon her race.

111. Defendant's termination of Walker was an adverse employment action against her.

112. Defendant's purported reason for Walker's termination was pretextual.

113. Defendant actually terminated Walker's employment due to her race.

114. Defendant violated R.C. § 4112 et seq. by terminating Walker because of her race on or about July 26, 2019.

115. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Walker differently from other similarly situated employees outside her protected class.

116. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Walker's race.

117. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Walker's race.

118. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

119. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

120. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Walker is African-American, and thus is in a protected class for her race.

122. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

123. Defendant treated Walker differently than other similarly situated employees based upon her race.

124. Defendant's termination of Walker was an adverse employment action against her.

125. Defendant's purported reason for Walker's termination was pretextual.

126. Defendant actually terminated Walker's employment due to her race.

127. Defendant violated Title VII by terminating Walker because of her race on or about July 26, 2019.

128. Defendant violated Title VII by treating Walker differently from other similarly situated employees outside her protected class.

129. Defendant violated Title VII by applying their employment policies in a disparate manner based on Walker's race.

130. Defendant violated Title VII by applying their disciplinary policies in a disparate manner based on Walker's race.

131. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

132. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT III: FAILURE TO PROMOTE BASED ON RACE DISCRIMINATION**

133. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Walker is African-American. At all times relevant, Walker was a member of a statutorily-protected class under R.C. §4112.14(B) and Title VII for her race.

135. Throughout her employment, Walker applied to several different positions at Defendant.

136. Walker was fully qualified for each of those opportunities.

137. Walker was not given any interviews for many of the positions.

138. Defendant's purported reasons (and lack thereof) for the failures to promote or interview Walker are pretextual.

139. Defendant actually failed to promote Walker based on her race.

140. Walker's race was a determinative factor in Defendant's decision not to promote Walker.

141. Defendant promoted people outside Walker's protected race class in place of Walker.

142. Defendant violated R.C. §4112.02, R.C. § 4112.99, and Title VII when they failed to promote Walker based on her race.

143. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

144. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT IV: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.**

145. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

146. Walker is 53 years old, and thus is in a protected class for her age.

147. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

148. Defendant treated Walker differently than other similarly situated employees based upon her age.

149. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Walker differently from other similarly situated employees outside her protected class.

150. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Walker's age.

151. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Walker's age.

152. Defendant's termination of Walker was an adverse employment action against her.

153. Defendant's purported reason for Walker's termination was pretextual.

154. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 when it terminated Walker's employment on or about July 26, 2019 for her age.

155. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

156. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT V: AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

157. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Walker is 53 years old, and thus is in a protected class for her age.

159. The ADEA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

160. Defendant treated Walker differently than other similarly situated employees based upon her age.

161. Defendant violated the ADEA by treating Walker differently from other similarly situated employees outside her protected class.

162. Defendant violated the ADEA by applying their employment policies in a disparate manner based on Walker's age.

163. Defendant violated the ADEA by applying their disciplinary policies in a disparate manner based on Walker's age.

164. Defendant's termination of Walker was an adverse employment action against her.

165. Defendant's purported reason for Walker's termination was pretextual.

166. Defendant violated the ADEA when they terminated Walker's employment on or about July 26, 2019.

167. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

168. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT VI: FAILURE TO HIRE/PROMOTE BASED ON AGE DISCRIMINATION**

169. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. Walker is 53 years old. At all times relevant, Walker was a member of a statutorily-protected class under R.C. §4112.14(B) and the ADEA for her age.

171. Throughout her employment, Walker applied for several promotions with Kroger.

172. Walker was fully qualified for each of those opportunities.

173. Walker was not given interviews for many of the positions.

174. Defendant's purported reasons (and lack thereof) for the failures to promote or interview Walker are pretextual.

175. Defendant actually failed to promote Walker based on her age.

176. Walker's age was a determinative factor in Defendant's decision not to promote Walker.

177. Defendant promoted people outside Walker's protected age class in place of Walker.

178. Defendant violated R.C. §4112.02, R.C. § 4112.99, and the ADEA when they failed to promote Walker based on her age.

179. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

180. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

**COUNT VII: RETALIATION**

181. Walker restates each and every prior paragraph of this complaint, as if it were fully restated herein.

182. As a result of the Defendant's discriminatory conduct described above, Walker complained of the discrimination, harassment, and disparate treatment she was experiencing.

183. Subsequent to Walker's complaints to management about harassment, bullying, and disparate treatment toward her, Defendant took adverse employment actions against Walker, including passing over her for promotions and terminating her employment.

184. Defendant's actions were retaliatory in nature based on Walker's opposition to the unlawful discriminatory conduct.

185. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

186. Walker incurred emotional distress damages as a result of Defendant's conduct described herein.

187. As a direct and proximate result of Defendant's failure to promote Walker based upon race discrimination, Walker has suffered and will continue to suffer damages.

## COUNT VIII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

188. Walker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

189. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

190. Kroger is a covered employer under the FMLA.

191. Walker was an employee eligible for FMLA.

192. During her employment, Walker qualified for and inquired FMLA leave due to her disabilities.

193. During her employment with Kroger, Walker was unable to receive FMLA benefits for her disabilities due to Kroger's actions.

194. Defendant unlawfully interfered with Walker's exercise of her rights under the FMLA in violation of § 105 of the FMLA and § 825.220 of the FMLA regulations.

195. Defendant's refusal to provide Walker with information pertaining to FMLA leave and/or permit Walker to take FMLA leave violated and interfered with her FMLA rights.

196. As a direct and proximate result of Defendant's conduct, Walker suffered and will continue to suffer damages.

197. As a direct and proximate result of Defendant's conduct, Walker is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Walker demands from Defendant the following:

a) Issue a permanent injunction:

      i.    Requiring Defendant to abolish discrimination, harassment, and retaliation;

     ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

     v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against Defendant for compensatory and monetary damages to compensate Walker for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Walker's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
8354 Princeton-Glendale Rd., Ste. 203,
West Chester, Ohio 45069
Phone: (216) 291-4744 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Camela Walker*

## JURY DEMAND

Plaintiff Camela Walker demands a trial by jury by the maximum number of jurors permitted.

  /s/ Matthew Bruce
Matthew G. Bruce (0083769)